

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DWAYNE NEAL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, ACTING )<br>COMMISSIONER OF SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. )<br>_____ ) | No. CV 15-4179-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 3, 2015, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on June 30, 2015, and July 14, 2015.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 10, 2016, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 5, 1971. [Administrative Record ("AR") at 13, 157, 161.] He has past relevant work experience as a bus driver and construction laborer. [AR at 13, 41.]

On July 10, 2013, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since June 14, 2013. [AR at 13, 157-60, 161-68.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 19, 104-05.] A hearing was held on November 17, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 26-45.] A vocational expert ("VE") also testified. [AR at 41-43.] On January 15, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from June 14, 2013, the alleged onset date, through January 15, 2015, the date of the decision. [AR at 13-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 6-7.] When the Appeals Council denied plaintiff's request for review on April 10, 2015 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

1    (same).  When determining whether substantial evidence exists to support the Commissioner's

2    decision, the Court examines the administrative record as a whole, considering adverse as well

3    as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted);

4    see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

5    consider the entire record as a whole and may not affirm simply by isolating a specific quantum

6    of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is

7    susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan,

8    528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin.,

9    466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

10   ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.")

11   (citation omitted).

12

13                                               IV.

14                        **THE EVALUATION OF DISABILITY**

15        Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

16   to engage in any substantial gainful activity owing to a physical or mental impairment that is

17   expected to result in death or which has lasted or is expected to last for a continuous period of at

18   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

19   1992).

20

21   **A.    THE FIVE-STEP EVALUATION PROCESS**

22        The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

23   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

24   828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

25   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

26   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

27   substantial gainful activity, the second step requires the Commissioner to determine whether the

28   claimant has a "severe" impairment or combination of impairments significantly limiting his ability

                                                3

1   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

2   If the claimant has a "severe" impairment or combination of impairments, the third step requires

3   the Commissioner to determine whether the impairment or combination of impairments meets or

4   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

5   subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If

6   the claimant's impairment or combination of impairments does not meet or equal an impairment

7   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

8   sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

9   and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

10  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

11  case of disability is established.  Id.  The Commissioner then bears the burden of establishing

12  that the claimant is not disabled, because he can perform other substantial gainful work available

13  in the national economy.  Id.  The determination of this issue comprises the fifth and final step

14  in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin,

15  966 F.2d at 1257.

16

17  **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

18          At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

19  June 14, 2013, the alleged onset date.[1]  [AR at 15.]  At step two, the ALJ concluded that plaintiff

20  has the severe impairments of insulin dependent diabetes mellitus; chronic obstructive pulmonary

21  disease ("COPD"); tobacco abuse; and hypertension.  [Id.]  At step three, the ALJ determined that

22  plaintiff does not have an impairment or a combination of impairments that meets or medically

23  equals any of the impairments in the Listings.  [AR at 15-16.]  The ALJ further found that plaintiff

24  retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20

25  _____

26  [1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social
       Security Act through December 31, 2017.  [AR at 15.]

27

28  [2]    RFC is what a claimant can still do despite existing exertional and nonexertional
                                                                            (continued...)

1  C.F.R. §§ 404.1567(a) and 416.967(a),[3] except for occasional bending/stooping, and preclusion

2  from exposure to pulmonary irritants and to temperature extremes.  [AR at 16.]  At step four,

3  based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to

4  perform his past relevant work as a bus driver and construction laborer. [AR at 19, 41-42.] At step

5  five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there

6  are jobs existing in significant numbers in the national economy that plaintiff can perform, including

7  work as an "assembler" (Dictionary of Occupational Titles ("DOT") No. 706.684-030), and "toy

8  stuffer" (DOT No. 731.685-014).  [AR at 20, 41-43.]  Accordingly, the ALJ determined that plaintiff

9  was not disabled at any time from the alleged onset date of June 14, 2013, through January 15,

10  2015, the date of the decision.  [AR at 32.]

11

12  **V.**

13  **THE ALJ'S DECISION**

14  Plaintiff contends that the ALJ erred when he:  (1) considered whether plaintiff met or

15  equaled Listing 3.02; (2) considered the opinion evidence of treating physician Genevieve Moya,

16  M.D.; and (3) considered plaintiff's subjective symptom testimony.  [Joint Stipulation ("JS") at 4.]

17  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

18

19  **A.   LISTING 3.02**

20  Plaintiff contends that his November 3, 2014, pulmonary function test demonstrates that

21  ────────────

22  [2](...continued)

23  limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
   three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which

24  the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,

25  1151 n.2 (9th Cir. 2007) (citation omitted).

26  [3]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
   or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined

27  as one which involves sitting, a certain amount of walking and standing is often necessary in
   carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and

28  other sedentary criteria are met." 20 C.F.R. § 404.1567(a), 416.967(a).

he meets Listing 3.02, "chronic pulmonary insufficiency." [JS at 5-6.]  According to plaintiff, in order for an individual whose height without shoes is between 66 and 67 inches to meet Listing 3.02, the forced vital capacity ("FVC") test result must be 1.55 or less, the forced expiratory volume in the first second ("FEV1") test result must be 1.35 or less, or the single breath diffusing capacity of the lungs for carbon monoxide ("DLCO") test result must be 10.5 or less.  [JS at 5-6 (citing Listing 3.02A, 3.02B and 3.02C).]

Plaintiff's November 3, 2014, pulmonary function test results found, in relevant part, that plaintiff had an FVC reading of 1.25; an FEV1 reading of 1.02; and a DLCO reading of 9.5.[4]  [AR at 721.]  Comments on the report interpreting the results state that "[t]here is a *severe restrictive* lung defect.  There is a *severe* decrease in diffusing capacity." [AR at 721 (emphases added).]  And, after reviewing the November 2014 test results, Dr. Lim requested authorization for a portable gaseous oxygen system.[5]  [AR at 722, 825.]  At the hearing, counsel argued that although the readings in August 2013 were "borderline," the fact that plaintiff did not respond to the bronchodilator is "somewhat telling as far as his condition is concerned," and that the November 2014 findings were themselves at Listing levels.  [AR at 43-44.]  Counsel further argued that plaintiff also equaled Listing 3.02 if his "co-morbidities of diabetes and hypertension" were taken into consideration.  [AR at 44.]  Counsel pointed out that in October 2014, the treating physician, Dr. Moya, had completed a Listings Questionnaire that was consistent with the argument that plaintiff met or equaled Listing 3.02, and in September 2014, Dr. Moya had determined that plaintiff was capable of only a "significantly reduced range of sedentary" work.  [Id. (citing AR at 304-05, 324-31, 628, 721).]  Both of Dr. Moya's opinions were issued prior to the November 2014 pulmonary function test results.  Here, plaintiff contends that based on the November 3, 2014, test results, he meets the requirements of Listing 3.02 "three different ways."  [JS at 6.]

---

[4]   More than a year earlier, an August 2013 pulmonary function test showed FVC readings of 1.61 and 1.71 liters before and after administration of a bronchodilator; an FEV1 of 1.43 with no change with the bronchodilator; and a DLCO of 13.5.  [AR at 628.]

[5]   The record shows that the request was denied "because it is not a covered benefit."  [AR at 825.]

1      Where disability is alleged under Listing 3.02, pulmonary function tests are performed under

2      the protocols set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 3.00E ("Listing 3.00E") and 3.00F

3      ("Listing 3.00F"). Listing 3.00E requires the following protocols: (1) the reported forced respiratory

4      maneuver (FVC or FEV1) "should represent the largest of at least three satisfactory forced

5      expiratory maneuvers"; and (2) "[s]pirometry should be repeated after administration of an

6      aerosolized bronchodilator," if the pre-bronchodilator FEV1 value is less than 70 percent of the

7      predicted normal value. Listing 3.00E also provides that where the use of a bronchodilator is

8      indicated based on the assessed FEV1 value, "[p]ulmonary function studies performed to assess

9      airflow obstruction without testing after bronchodilators cannot be used to assess levels of

10     impairment in the range that prevents any gainful work activity. . . ." Additionally, DLCO results

11     should represent the mean of at least two acceptable measurements, and the two acceptable tests

12     should be "within 10 percent of each other or 3 ml CO(STPD)/min/mm Hg, whichever is larger."

13     Listing 3.00F.

14     Defendant argues that Listing 3.00E requires "three instances of [FVC or FEV1] testing,"

15     and that plaintiff has only had two instances of testing: one in August 2013, and the other in

16     November 2014.[6] [AR at 6-7.] Plaintiff responds that because the November 2014 report states

17     that the results are "ACCEPTABLE and REPRODUCIBLE," and that reproducibility is a term of

18     art describing the range of results from multiple tests,[7] the question is raised as to how many

19     administrations of the various tests actually occurred at the testing in November 2014, i.e.,

20     consistent with the protocols, there must have been multiple tests to meet the requirements for

21

22     _____

23     [6]    Defendant makes a similar argument regarding the DLCO results -- i.e., that the protocol
       requirement that the DLCO value used for adjudication should represent the average of at least
24     two acceptable measurements that are within 10 percent of each other, suggests that it is
       appropriate to average plaintiff's August 2013 and November 2014 DLCO score results and,
25     therefore, plaintiff's DLCO scores did not meet the testing requirements as they were not within
       ten percent of each other or 3 ml CO(STPD)/min/mm HG. [JS at 8 (citing Listing 3.00F)].

26     [7]    Listing 3.00E specifically provides that "[a] value is considered reproducible if it does not
27     differ from the largest value by more than 5 percent or 0.1 L, whichever is greater. The highest
       values of the FEV1 and FVC, whether from the same or different tracings, should be used to
28     assess the severity of the respiratory impairment."

1    the results to be "ACCEPTABLE and REPRODUCIBLE." [JS at 9.] He contends that the Listing

2    does not require that the readings occur on different days or be separated by any specific time

3    period. [Id.]

4          Based on the language of Listing 3.02 and the associated protocols of Listing 3.00, as well

5    as existing case authority, the Court agrees with plaintiff that the regulations require that for

6    purposes of adjudicating whether a claimant meets Listings 3.02A or 3.02B, FEV1 and FVC values

7    should be determined based on three satisfactory forced expiratory maneuvers *during one session*

8    at which the results were acceptable and reproducible. See Beckham v. Comm'r of Soc. Sec.,

9    2013 WL 935529 (M.D. Fla. Mar. 11, 2013) (noting the "relatively sparse case law on this issue,"

10    and citing Johnson v. Barnhart, 66 F. App'x 285 (3d Cir. Jan. 29, 2003) (unpublished), which held

11    that the ALJ should not have ignored or dismissed the claimant's latest FEV1 scores simply

12    because they were inconsistent with earlier FEV1 scores, but should have clearly articulated why

13    he was crediting the earlier scores over the later and, if unable to reconcile the two sets of scores,

14    the ALJ should have either consulted a medical expert or obtained additional medical evidence);

15    see also Ford v. Colvin, 2014 WL 4961155, at *4 (S.D. Ind. Sept. 29, 2014) (holding that the "three

16    satisfactory forced expiratory maneuvers" contemplated by Listing 3.00E should occur during one

17    pulmonary function test and not on different dates). In this case, however, the November 2014

18    pulmonary function test report does not make clear whether the FVC and FEV1 scores were

19    obtained after the requisite three maneuvers were conducted, or whether the DLCO result was

20    based on two acceptable tests, and the Court thus cannot determine if these tests were conducted

21    according to the protocols. [See also supra note 6.]

22          Defendant also argues that the November 2014 testing did not comply with the testing

23    protocols because plaintiff did not show that a bronchodilator was contraindicated, and there is

24    no evidence that the testing was repeated after administration of a bronchodilator, which "should

25    be" done if the FEV1 value was "less than 70 percent of the predicted normal value." [JS at 7

26    (citing Listing 3.00E).] Without such repeat testing with a bronchodilator when that condition is

27    met, as it was here, "[p]ulmonary function studies used to assess airflow obstruction without

28    bronchodilators cannot be used to assess levels of impairment in the range that prevents any

1  gainful work activity." [Id. (citing Listing 3.00E).]  Defendant contends that failure to administer the

2  bronchodilator based on plaintiff's FEV1 score invalidates *both* the FEV1 *and* the FVC results.

3  [AR at 7.]  Here, with respect to the FEV1 results, the report indicates a "Ref" value of 3.07, and

4  notes that plaintiff's "Pre Meas" FEV1 value of 1.02 was 33 percent of the "Ref" value.  [AR at

5  721.]  Assuming that the "Ref" value of 3.07 is the "predicted normal value," then it appears that

6  the testing should have been repeated after administration of a bronchodilator.  However, again

7  there is no indication in the report why that was not done.  See Listing 3.00E ("If a bronchodilator

8  is not administered, the reason should be clearly stated in the report.").

9         Notwithstanding that the FEV1 testing was apparently not repeated after administration of

10  a bronchodilator, Listing 3.02 only requires that the claimant meet or equal the requirements of

11  Listing 3.02A (COPD diagnosis and FEV1 results) *or* 3.02B (chronic restrictive ventilatory disease

12  and FVC results) *or* 3.02C (chronic impairment of gas exchange due to clinically documented

13  pulmonary disease and DLCO results).  20 C.F.R. pt. 404, subpt. P, app. 1, §§ 3.02A, 3.02B,

14  3.02C.  Although somewhat unclear, it appears to the Court, therefore, that although the FEV1 test

15  was not repeated after use of a bronchodilator -- even though plaintiff's FEV1 value was

16  apparently less than 70 percent of the predicted normal value -- this failure to repeat the FEV1 test

17  after use of a bronchodilator *only* impacts the validity and consideration of the FEV1 pulmonary

18  function test and not -- as defendant argues [JS at 7] -- the other pulmonary function test results.

19  Plaintiff's scores still meet the Listing levels with respect to his FVC and DLCO test results and,

20  even before the November 2014 test results, Dr. Moya opined that plaintiff suffered from chronic

21  restrictive ventilatory disease and chronic impairment of gas exchange[8] -- diagnoses required to

22  meet Listings 3.02B and 3.02C.  [See AR at 327, 328; see also 20 C.F.R. pt. 404, subpt. P, app.

23  1, §§ 3.02B, 3.02C).]  This issue will not be decided here but may need to be considered by the

24

_____

25    [8]    The Court also observes that the ALJ gave "great weight" to the opinions of the State
26  agency reviewing physicians, R. Fast, M.D., and A. Nasrabadi, M.D., who opined that plaintiff was
   capable of a "wide range of sedentary work."  [AR at 19 (citing AR at 57-65, 77-85, 306-23).]
27  However, these physicians did not have the benefit of the November 2014 test results when they
   did their reviews in November 2013 and February 2014, respectively.  [AR at 57-65, 77-85, 306-
28  23.]

ALJ on remand.  Indeed, the ALJ may need to obtain the testimony of a medical expert or additional medical evidence on remand to fully and fairly develop all of the issues discussed herein.

In considering the ALJ's decision, the Court is "constrained to review the reasons the ALJ asserts," Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. Nov. 3, 2015) (citation omitted), and cannot consider post hoc reasoning by defendant, or even the evidence upon which the ALJ could have relied.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts" and finding error where the court affirmed the ALJ's decision "based on evidence that the ALJ did not discuss") (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)).  In his decision, the ALJ addressed only the August 2013 pulmonary function test results when he found that plaintiff's impairments did not meet or equal the requirements of Listing 3.02.  [See AR at 16, 17 (noting that the August 2013 pulmonary function tests "demonstrated severe chest restriction without obstruction and with moderately severe impairment of the uncorrected DLCO.").]  The ALJ never mentioned, discussed, or dismissed the November 2014 pulmonary function test results in the decision, other than to note in passing that plaintiff had been denied a portable gaseous oxygen system in November 2014.[9] [AR at 18.]  If any of the pulmonary function tests from November 2014 were conducted in accordance with the provisions of Listing 3.00E, then plaintiff may be entitled to benefits under Listing 3.02A, 3.02B, and/or 3.02C.  If any of the pulmonary function tests at issue were not conducted in accordance with listing 3.00E, then he may not be, at least based on those results. It cannot be determined from the decision why the ALJ did not mention that report.  In fact, the ALJ's decision provides no valid reason, supported by substantial evidence, for failing to discuss, weigh, or otherwise analyze the results of the seemingly highly relevant November 2014 pulmonary function tests.  In short, defendant's speculative arguments that the November 2014 testing did not follow the required protocols, either in the number of instances of FVC and FEV1

---

[9]   Because the unit apparently  was denied as it was not covered by insurance [AR at 825], any implication on the part of the ALJ that the authorization was denied because plaintiff's condition did not warrant such a unit is not supported by the evidence.

1  tests performed, or in the examiner's failure to repeat the tests after administering a
2  bronchodilator, or in the consideration of the DLCO results, were not conclusions reached *by the*
3  *ALJ*, and therefore, are unpersuasive.    Moreover, it is the ALJ's responsibility, not the Court's,
4  to weigh the evidence and to resolve conflicts of evidence, and to fully and fairly develop the
5  record and inquire fully into each relevant issue.  An ALJ has the duty "to fully and fairly develop
6  the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). This
7  duty is triggered when, as here, the evidence in the record is ambiguous or inadequate to allow
8  for proper evaluation thereof.  Id.; Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  At a
9  minimum, the ALJ should have provided a legally adequate explanation as to why he was
10  discounting, discrediting, or otherwise refusing to consider the November 2014 test results, which
11  otherwise appear to support a finding that plaintiff met Listing 3.02.

12     Remand is warranted on this issue.

13

14  **B.     TREATING PHYSICIAN AND CREDIBILITY**

15     Because the Court finds that the ALJ's failure to properly explain his consideration of the
16  Listing 3.02 criteria in light of the record evidence is a sufficient basis to remand the case to the
17  Commissioner, the Court declines to specifically address plaintiff's additional allegations of error
18  by the ALJ.  However, upon remand, the Commissioner should take into consideration plaintiff's
19  remaining allegations of error, including the ALJ's consideration of Dr. Moya's opinions and
20  plaintiff's credibility.

21

22                                   **VI.**

23                        **REMAND FOR FURTHER PROCEEDINGS**

24     The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,
25  888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further
26  proceedings, or where the record has been fully developed, it is appropriate to exercise this
27  discretion to direct an immediate award of benefits.  See Lingenfelter v. Astrue, 504 F.3d 1028,
28  1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are

1  outstanding issues that must be resolved before a determination can be made, and it is not clear

2  from the record that the ALJ would be required to find plaintiff disabled if all the evidence were

3  properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96.

4       In this case, there are outstanding issues that must be resolved before a final determination

5  can be made.  In an effort to expedite these proceedings and to avoid any confusion or

6  misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

7  proceedings.  First, the ALJ shall reassess all of the medical opinion evidence, including the

8  November 3, 2014, pulmonary function test results, and must explain the weight afforded to each

9  opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts

10  or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of

11  the others, or for rejecting any significant and probative evidence.  The ALJ shall obtain additional

12  medical evidence or the testimony of a medical expert, if necessary to fully and fairly develop the

13  record.  Second, if the ALJ determines that plaintiff does not meet or equal a Listing at step 3 of

14  the analysis, the ALJ shall also reassess plaintiff's subjective allegations, and either credit his

15  testimony as true, or provide specific, clear and convincing reasons, supported by substantial

16  evidence in the case record, for discounting or rejecting any testimony.  Finally, the ALJ shall

17  reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary,

18  whether there are jobs existing in significant numbers in the national economy that plaintiff can still

19  perform.[10]

20

21                                          **VII.**

22                                  **CONCLUSION**

23       **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the

24  decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

25  proceedings consistent with this Memorandum Opinion.

26

27  _____

28       [10]  Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to
     return to his past relevant work.

12

1    **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

2    Judgment herein on all parties or their counsel.

3    **This Memorandum Opinion and Order is not intended for publication, nor is it**

4    **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

5

6    DATED:  March 1, 2016

                                                                    _____
7                                                                   PAUL L. ABRAMS
                                                                    UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28